### 7917

### FORT v. CALDWELL.

1. PURCHASER FOR VALUE.—One buying timber without notice that the title of his vendor was obtained by fraud and expending money, time and labor in carrying his purchase into effect is a purchaser for value without notice.

2. DAMAGES.—Where such purchaser voluntarily removes from the premises such portion of his plant as renders the whole inoperative, he is only entitled to damages to the time of such removal.

Before GARY, J., Lexington, October, 1910. Modified.

Action by Lessie H. Fort against Howard Caldwell and N. C. McDuffie Co. The Circuit decree is:

"On and for many years prior to the 12th day of September, 1907, the plaintiff was owner in fee of a large body of timbered land situate in Lexington county. That at said time the defendant, Howard Caldwell, was a real estate dealer, living in the city of Columbia. That said Caldwell opened up negotiations with the plaintiff and her husband to acquire a license to cut and market the timber on said premises, and, as a result, the plaintiff in consideration of five hundred dollars, on that date paid to her by said Caldwell, executed and entered into a written agreement with the defendant, Caldwell, wherein she agreed to sell to the said Howard Caldwell, all the saw timber on the said premises for a space of six years, the said agreement by its terms expressly authorizing the said Howard Caldwell to cut and saw and take and carry away and sell all the saw timber now standing on said land, and other privileges not material to this issue are fully set out in said agreement.

"It is also stipulated in said agreement that the aefendant, Howard Caldwell, in consideration of the covenant above set forth, would pay to the plaintiff two thousand and five hundred dollars upon the execution and delivery to him by the plaintiff of a proper conveyance carrying out the terms of said agreement, including a deed to a mill plant and its equipments, already erected on said premises, also six thousand dollars to be paid nine months from the date of the bargain and sale of said timber, with interest from date until paid at the rate of six per cent. per annum; also three thousand dollars twelve months from the date of said deed and sale with the same rate of interest (six per cent. until paid).

"Subsequently to the execution of this agreement, and on the 19th day of September, 1907, the plaintiff executed to the defendant, Howard Caldwell, an instrument in the nature of a deed, but in effect a license, conveying the saw timber on said premises with full power to cut, saw and take and carry away and sell all the saw timber standing upon the said land. This deed by its terms conveys to the said Howard Caldwell the land as well as the timber for a period of six years. The consideration expressed in said deed is twelve thousand dollars. The real consideration, however, was the execution and delivery by Caldwell of two promissory notes, the one for three thousand dollars, dated 19th of September, 1907, payable twelve months after date to the order of the plaintiff; the other executed at the same time for six thousand dollars and payable nine months after date; together with the five hundred dollars paid at the time of the execution of the agreement, for the license, and the sum of two thousand and five hundred dollars paid at the time of the execution and delivery of the deed.

"That immediately after the execution ·and delivery of said deed, to wit, on the 19th day of September, 1907, said defendant, Howard Caldwell, .went into possession of said

real estate and commenced his operations cutting, sawing and marketing the timber on said premises.

"That thereafter, on the 13th day of January, 1908, said defendant, Caldwell, entered into a contract with the defendant, N. C. McDuffie & Company, whereby he sold and conveyed to said N. C. McDuffie Company as much of the timber on said tract of land as was sufficient to run a shingle mill for 'so long a time as the timber on said land lasts or until it had been exhausted.' This contract included a sale of both original timber and tops.

"The consideration for this contract was recited to be the sum of one dollar in hand paid, and a further payment by N. C. McDuffie Company to said Howard Caldwell of so much per thousand, for shingles cut by said N. C. McDuffie Company, ———, a price varying according to the grades of shingles manufactured. Under this contract N. C. McDuffie Company moved its shingle mill to said tract of land, dug a well, put up sheds and tenant houses, and expended a considerable sum of money in putting itself in a position to carry out its part of the contract, and commenced to develop its business by the manufacture and sale of various grades of shingles.

"That thereafter, on or about the 24th day of February, 1908, said N. C. McDuffie Company contracted to buy from said Howard Caldwell all of his, said Howard Caldwell's, timber rights on said tract of land, and actually paid the sum of one hundred dollars in cash as a part of the purchase price, agreeing to pay the balance, to wit, the sum of ——— dollars upon the execution and delivery of a good and sufficient deed conveying the same rights to it as the said Howard Caldwell had acquired in said timber under his deed from Lessie H. Fort, the plaintiff herein.

"It appears from the complaint and the answer of N. C. McDuffie & Company, that about this time—before the actual transfer of Howard Caldwell to N. C. McDuffie Company, that the plaintiff, learning of the proposed trans-

fer, and being acquainted with the fact that the consideration to be paid by N. C. McDuffie Company to Howard Caldwell was less than the aggregate sum of the two notes given by Caldwell to her for the agreed portion of the purchase price under her said deed of the 19th of September, 1907, made a demand upon said Caldwell to have the purchase money from the McDuffie Company paid to her, but that such demand was refused. That, thereupon, through her attorneys, she warned the defendant, N. C. McDuffie Company, not to comply further with the terms of its agreed purchase as she intended to take steps to protect her rights therein, and it appears that said N. C. McDuffie Company did not further comply with its contract to purchase.

"Subsequently, by complaint dated the 3d day of March, 1908, the plaintiff brought this action against the defendants above named, alleging her prior ownership in the tract of land and 'the sawmill, engine, log wagons, wagons, and all other sawmill equipments then located upon the said tract of land;' that she had contracted to sell the timber rights and the chattels above mentioned to said Howard Caldwell upon the terms hereinbefore stated in this decree, and that she had so conveyed the same upon the terms agreed upon in view of certain representations made to her by said Caldwell as to his worth and ability to meet the credit portion of the purchase price as represented by the said two notes aggregating nine thousand dollars; that the deed was procured through fraud and imposition in falsely and fraudulently representing to plaintiff his worth in money and in representing to her the time that it would take for him to cut, saw, sell and dispose of said timber, and in further representing that he could not and would not sell and dispose of the timber until after she had been paid the credit portion of the purchase price thereof; further, that in spite of such representation said Howard Caldwell had contracted to sell for a lump sum of money in cash—being less than the

amount due by him to the plaintiff, all of said timber, with the intent to defeat the payment of the sum of money he was due plaintiff, and that by reason thereof plaintiff would suffer an irreparable injury and lose the whole of the nine thousand dollars owing her. The defendant, N. C. McDuffie Company, was made a party to the action as the one to whom said Howard Caldwell had contracted to sell said timber.

"The action was for fraud in the obtaining of the said deed to said tract of timber, and the complaint prayed that the conveyance be declared void and the deed ordered delivered up for cancellation; further, that said defendant, Caldwell, be enjoined and restrained from cutting, selling and disposing of the timber or in any manner interfering with the same until he had paid the sum of nine thousand dollars owed by him to the plaintiff, and that the defendant, N. C. McDuffie Company, be enjoined and restrained from buying said timber and from paying the defendant, Caldwell, any sum of money therefor. The complaint also prayed for the appointment of a receiver to take charge of the property and for such other relief as might be just and might meet the demands of equity.

"Thereafter, on the 12th of March, 1908, the Honorable John S. Wilson, Judge presiding in the Fifth Circuit, passed an order requiring the defendants to show cause before him why the injunction prayed for in the complaint should not be granted, and in the meantime enjoining and forbidding said defendants from committing any of the acts prayed for by the plaintiff.

"The summons, complaint and rule to show cause was served on both defendants on the 13th day of March, 1908.

"Both defendants made return to the rule to show cause, and on the 24th day of March, 1908, his Honor, Judge John S. Wilson, made permanent the temporary injunction theretofore granted, pending the hearing of the cause on its merits, requiring the plaintiff to enter into an undertaking.

in the sum of five thousand dollars conditioned that the
plaintiff would pay to the defendants such damages as they
might sustain by reason of such injunction if the Court
should finally decide that the plaintiff was not entitled
thereto. The record disclosed the fact that the injunction
bond required of the plaintiff was given.

"Thereafter both defendants answered. The answer of
the defendant Caldwell is in effect a denial of all of the alle-
gations of the complaint charging fraud and imposition on
his part, but admitting the allegations with reference to his
purchase of the timber, and encumbrance by way of mort-
gage placed thereon, and a contract to sell the same to the
defendant, N. C. McDuffie Company. The answer of
the defendant, McDuffie Company, sets up the defense of
purchaser for valuable consideration without notice, under its
contract 'to run a shingle mill for so long a time as the tim-
ber on said land should last, or until it had been exhausted,
with no limitation as to the time except such as was set
forth in the deed from the plaintiff to the defendant,
Howard Caldwell;' it also admits that it had contracted to
purchase from said Howard Caldwell the entire timber
rights on said tract of land—such contract to purchase
being subsequent in date to the contract for the operation
of the shingle mill; it asks to be relieved from the contract
to purchase on account of having been restrained and
enjoined from complying with said contract to purchase; it
asks for damages under the restraining order on account of
the expense it had been put to in fitting up and carring on
its operations under said shingle mill contract, and for dam-
ages resulting from its being prevented from performing
its work, labor and operations under said contract.

"The only modification of the order of injunction herein-
before referred to was a consent order signed by the Honor-
able John S. Wilson on April 15th, 1908, permitting the
defendant, N. C. McDuffie Company, to continue its oper-
ations under its shingle mill contract until June, 1908, term,

of the Court of Common Pleas for Lexington county—the prices to be paid for shingles cut to be those mentioned in said contract, all parties agreeing that such prices were full and fair—payment being made to the clerk of the court for Lexington county, who should hold all funds coming into his hands from such source subject to the further orders of this Court.   This right continued until some time in June, 1908, when the attorneys for the plaintiff declined to have the order continued and the defendant, N. C. McDuffie Company, discontinued its operations by reason of the former injunction order, shut down their mill and kept the same shut down until the ———— day of ————, when they moved the same away from said tract of land.

"Under said consent order all other rights and equities of the defendant, N. C. McDuffie Company, were preserved except that it was released from its contract to purchase the timber from Howard Caldwell.

"Under an order of reference, dated the 23d of June, 1908, signed by his Honor, Judge J. W. DeVore, presiding Judge, referring the cause to Samuel B. George, Esq., to take the testimony, the case now comes before me for a hearing and determination—the testimony having been reported by said referee.

"So far as the controversy constitutes a conflict of the rights of the plaintiff on the one hand, and the defendant Howard Caldwell, on the other hand, after hearing exhaustive argument by counsel for all parties, Messrs. Graham & Sharpe on behalf of Mrs. Fort, Messrs. D. W. Robinson and Washington Clark on behalf of the defendant, Caldwell, and Messrs. Logan & Edmunds on behalf of the defendant, N. C. McDuffie Company, and after a careful review of the testimony, I am satisfied that in the making of the contract to sell the timber and the mill plant which went therewith, and in the subsequent conveying the same, that the plaintiff, and her husband who was acting with her, and was at the time an aged man, feeble in health (he

has since the commencement of this action died), were over-reached by the said Howard Caldwell, and that the deed executed and delivered by her to said Caldwell should be delivered up for cancellation.

"The evidence to my mind is clear and convincing that the representations alleged in the complaint, as having been made by said Caldwell to the plaintiff, were made, and that upon the strength of these representations the deed to the timber rights was executed. The testimony of all parties present when the original agreement was made, with the exception of the testimony of the defendant, Caldwell, all shows that the plaintiff relied upon the representations of said defendant as to his worth and ability to pay the obligation incurred for the credit portion of the purchase money, and the representations as to the length of time it would take to cut, saw and market the timber, and that she would be paid before that time elapsed.

"Mrs. Fort testified: 'I asked if it was not necessary or customary in a case like that for me to have some security, something like that' * * * 'He said no, that would not be necessary. He said the timber would be there, and that he could not possibly make way with the timber by the time payment was due in six months. He intended to saw it himself.' (b. 125.)

"The witnesses, Earle Fort and W. D. Durham, testified to the same effect.

"Mrs. Fort and the two witnesses named also testified as to the defendant, Caldwell, giving an estimate of his worth in money and property.

"The denial of said defendant upon these matters is qualified and more in the nature of an avoidance—he admits that he did represent his worth, but simply denies the extent he went to in making these representations. As to the matter of time within which he expected to cut and market the timber, he admits in his answer that the credit portion would become due 'long before the expiration of the six years men-

tioned in the contract and deed.'  It could not have been in the mind of either party at the time of the execution of the contract and deed, certainly so far as the testimony shows, that the purchase made by Caldwell was for any purpose other than to use the rights individually, and that nothing should be done to defeat the plaintiff's rights to recover the nine thousand dollars owing for the credit portion. Yet the defendant, Caldwell, placed a mortgage encumbrance on the land and contracted to sell the same for a price much less than he owed the plaintiff for the credit portion of the purchase price and refused to do any act whereby the plaintiff's rights might be protected.  His explanation of his conduct fails to satisfy me of the *bona fides* of the transaction on his part.  A great portion of the best timber, so far as the testimony shows, has been cut—the value of the tract as a timber tract greatly decreased—a considerable lot of timber has been marketed, and the balance standing was contracted to be sold.  Had the latter transaction been consummated there can be scarcely a doubt but that the plaintiff would have suffered an irreparable injury in the loss of a debt due her on account of the rights which she had parted with contrary to every representation made to her, and I am forced to the conclusion, from all of the acts of the defendant, Caldwell, after he acquired the timber rights from the plaintiff, that the original transaction in procuring the contract and deed, was so lacking in the elements of good faith on his part, as to shock the conscience of a court of equity and require the cancellation of the deed as hereinbefore ordered and decreed.

"So far as the rights of the defendant, N. C. McDuffie Company, are concerned they are now under the pleadings, and the order of Judge Wilson of date 15th of April, 1908, hereinbefore referred to, limited to a consideration of the single matter of their rights as *bona fide* purchasers for valuable consideration without notice under their 'shingle mill contract'—the matter of their rights to purchase the

5—89

entire tract having been eliminated under said consent order of the 15th of April, 1908.

"I have no hesitation in reaching a conclusion as to their rights under said contract.

"At a glance it was seen that McDuffie became a purchaser of the license for a valuable consideration. And I so hold and conclude that as between the claim of the plaintiff against the defendant, Howard Caldwell, for a rescission and cancellation of the deed and an injunction restraining him from further use of the timber, the rights of N. C. McDuffie Company intervene as *bona fide* purchasers for valuable consideration without notice under said contract referred to, and that they are entitled to such protection as innocent purchasers.

"It is therefore ordered, adjudged and decreed:

1. "That the defendant, Howard Caldwell, be, and he is hereby, forever restrained and enjoined from cutting, selling, wasting, disposing of, or in any manner using the timber on the land described in the complaint.

2. "That the defendant, Howard Caldwell, deliver up to the clerk of court for Lexington county the said deed of Lessie H. Fort to Howard Caldwell, of date the 19th day of September, 1907, and that the same be marked null and void and cancelled of record by said clerk of court.

3. "That inasmuch as the plaintiff, Lessie H. Fort, received from Howard Caldwell the sum of three thousand dollars in cash on account of the purchase price of said timber that it be referred to Samuel B. George, Esq., as special referee to take the account between the plaintiff and said Howard Caldwell, to determine the difference, if any, between the amount so paid by said Caldwell to plaintiff and the value of the use and occupation of said land and timber, including the amount of timber cut and sold and the depreciation in the value in said timber tract by reason thereof by said Caldwell from the 19th day of September, 1907, to the 13th day of March, 1908, being the date of the

temporary restraining order and rule to show cause herein, so that judgment may be rendered accordingly.

4. "That it be adjudged that the plaintiff was not entitled to the injunction granted under the order of Judge Wilson, dated 24th of March, 1908, as against the defendant, N. C. McDuffie Company, by which it was restrained and enjoined from pursuing its work under its said contract to cut, saw and market shingles by the said order of March 24th, 1908; that it be referred to the said Samuel B. George, Esq., as special referee to take the testimony as to the damages suffered by said defendant by reason of such injunction order, such testimony being limited to the damages suffered from the said 24th of March, 1908, to the ———— day of Jaunary, 1909, at which latter time it voluntarily moved the shingle mill from said tract of land, and that such damages be assessed against the bond given by the plaintiff to indemnify the defendant as provided in said order of March 24th, 1908, and that judgment be rendered in favor of said defendant, N. C. McDuffie Company, accordingly.

6. "That the plaintiff have judgment for her costs against the defendant, Howard Caldwell.

7. "The defendant, N. C. McDuffie Company, have judgment for its costs against the plaintiff."

The plaintiff appeals on the following grounds:

1. "Because his Honor erred in holding that the defendant, N. C. McDuffie Company, were *bona fide* purchasers for valuable consideration without notice of the timber in question under their 'shingle mill contract,' when said contract shows that no consideration was paid by the McDuffie Company at the time of the execution of said contract, and when the testimony of W. B. Montgomery, the vice president of the McDuffie Company, is that no money had been paid the defendant, Howard Caldwell, for the said timber up to the time of the commencement of this action, and it is respectfully submitted that there was not a particle of testimony going to show that the defendant, McDuffie

Company, was a purchaser of said timber for value without notice.

2. "For that his Honor erred in not holding that the defendant, N. C. McDuffie Company, had failed to prove that it had paid valuable consideration for the timber, that it had the legal title, or best right to it, and that it had purchased *bona fide* without notice, and was not a *bona fide* purchaser of said timber for value without notice.

3. "For that his Honor erred in not holding that the deed from plaintiff to defendant, Howard Caldwell, for the timber in question showed that said timber had not been paid for, but merely 'secured to be paid' was such constructive notice to the defendant, McDuffie Company, as to put it on inquiry, said deed being on record prior to the execution of said 'shingle mill contract,' and therefore the McDuffie Company was not an innocent purchaser without notice.

4. "For his Honor erred in not holding that plaintiff being in the actual possession of the land and timber in question, and actually living on said premises, which was well known to the McDuffie Company, operated as notice to the McDuffie Company, who should have made inquiry of plaintiff under the facts and circumstances of this case, and that it could not claim to be an innocent purchaser for value without notice.

5. "For that his Honor erred in holding that the plaintiff was not entitled to the injunction granted by Judge Wilson on the 24th day of March, 1908, against the defendant, McDuffie Company, under the facts and circumstances of the case, when the said McDuffie Company utterly failed to show that it was a *bona fide* purchaser for value under its shingle mill contract, and when said McDuffie Company advised plaintiff to institute an action for injunction.

6. "For that his Honor erred in holding that the McDuffie Company was entitled to recover of plaintiff damages from the 24th day of March, 1908, to the ———— day of January, 1909, which it had suffered by reason of the

injunction, when all the testimony in the case showed, and his Honor so found, that said McDuffie Company was allowed to operate its mill under said 'shingle mill contract,' by an order of the Court herein, until the June term of Court in Lexington county, in 1908, and when from McDuffie's own testimony he removed the engine and boiler from said premises in August, 1908, which engine and boiler were parts of said shingle mill and without which he could not have operated it, and it is respectfully submitted that his Honor erred as a matter of law in holding that the McDuffie Company was entitled to any damages at all, and especially for any damages prior to June term of Court in 1908, and after August, 1908, at which last date the said McDuffie Company voluntarily removed its mill or the greater portion of it from said premises.

7. "Excepts because his Honor erred in holding that the McDuffie Company was entitled to judgment against the plaintiff for its costs, when under the facts and circumstances of the case it is respectfully submitted that it was not entitled to such costs.

8. "For that his Honor erred in not holding that the McDuffie Company was estopped from asking for any damages against the plaintiff in this case, by asserting that it was the friend of plaintiff and would not injure her; by persuading plaintiff to allow it to operate its shingle mill on said premises from the granting of said order of injunction until the June term of Court, 1908.

9. "For that his Honor erred in not holding that the McDuffie Company had violated the said shingle mill contract in failing to saw up the tops and laps of said trees, when the testimony shows that it had not sawed up the tops and laps of the trees, and the dead timber as required by said contract, but that it had only sawed up the best part of the trees, leaving the tops and laps of the trees and the dead timber on the ground, and having breached said contract it could not claim damages.

10. "Because having required the referee to take the testimony and determine the difference, if any, between the amount paid by Caldwell to the plaintiff and the value of the use and occupation of said land and timber, including the amount of timber cut and sold and the depreciation in the value in said timber by reason thereof, by said Caldwell, from the 19th September, 1907, to the 13th day of March, 1908, his Honor erred in not requiring the said Caldwell to account for the use and occupation of said lands and timber, including the amount of the timber cut and amount sold, and the depreciation in the value of said timber and land from the 19th day of September, 1908, to the filing of the injunction bond in this case, on the 30th day of March, 1908, when the testimony shows that the said Caldwell and his agents and servants continued to occupy and sell the timber on said land or premises, until the filing of the injunction bond in this case.

11. "For that having found that the said mill and outfit which the defendant, Caldwell, bought from plaintiff was a part of the consideration of the twelve thousand dollars which Caldwell was to pay plaintiff for said timber, which said sawmill was used by the said Caldwell, and greatly injured and damaged by him, a great portion of which mill and outfit had been removed, torn up and destroyed, sold and disposed of by the said Caldwell as shown by the testimony in the case, thereby rendering the same valueless, his Honor erred in not requesting him to account for the use, damage and injury to said land, sawmill and outfit as well as the parts thereof torn up and destroyed by the said Caldwell.

12. "For that having held that the defendant, Caldwell, procured the deed from plaintiff for the timber and sawmill through fraud and imposition, it is respectfully submitted that his Honor erred in not requiring the defendant, Caldwell, to account for the use, damage and injury to said sawmill and outfit, timber and land, from the time he took pos-

session thereof until he ceased to occupy and possess the same, to wit, until the 30th day of March, 1908, when the injunction bond was filed in the clerk's office."

*Messrs. G. T. Graham* and *W. H. Sharpe* for appellant.

*Messrs. D. W. Robinson* and *Washington Clark* for Caldwell, contra.

*Messrs. Logan & Edmunds for* N. C. McDuffie Co., contra.

May 23, 1911. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action to set aside a deed for fraud.

The facts are fully stated in the decree of his Honor, the Circuit Judge, which, together with the appellant's exceptions, will be reported.

The first question raised by the exceptions, is, whether there was error, on the part of his Honor, the Circuit Judge, in concluding, that the defendants, N. C. McDuffie Co., were purchasers for valuable consideration without notice. They entered into the contract with Howard Caldwell, before they had notice, that the deed executed in his favor, by the plaintiff, was void. Under that contract, N. C. McDuffie Co., not only assumed financial obligations, but expended time and money, in carrying the provisions of the contract into effect, before they had notice, that said deed was not valid.

The exceptions raising this question are therefore overruled.

The next question is, whether there was error, on the part of the Circuit Judge, in ruling, that N. C. McDuffie Co. were entitled to damages, from the 24th of March,

1908, to the      day of January, 1909. There are two reasons why the exceptions raising this question, must be sustained. During a part of that time, to wit, from the 15th of April to the June term of Court, in 1908, N. C. McDuffie Co., were allowed to continue operations, under their shingle mill contract.

The other reason is, that N. C. McDuffie Co., removed their plant in August, 1908.

N. C. McDuffie, one of the defendants, testified as follows:

"And you have left the mill there until last January, until the last week in January of this year, for the reason that you had no place to put it? No, that is not exactly right. Then, what is right? We moved the boiler and engine away from there, about last August. Well, you are not damaged $400 per month, as to the boiler and engine that were moved away? We purchased a sawmill and necessary equipments, to rig up a complete sawmill, and in that way, made use of the boiler, engine and live stock. The shingle machinery was left at the Pelion location, until the last week in January of 1909." Thus showing, that they voluntarily removed, such parts of the shingle mill plant, as rendered its further operation impossible. Therefore, upon the accounting they will not be entitled to recover damages after that time.

Statements made, in open Court, by the attorneys for the plaintiff and the defendant, Howard Caldwell, render unnecessary, the consideration of the 11th and 12th exceptions.

It is the judgment of this Court, that the judgment of the Circuit Court be modified.